**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JENNIFER A. ZURENDA,**

                 **Plaintiff,**

   **-against-**                          **3:10-CV-0882**

**CARDIOLOGY ASSOCIATES, P.C.,**

                 **Defendant.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


**DECISION & ORDER**

**I.     INTRODUCTION**

      Plaintiff commenced this action *pro se,* asserting that she was discharged and harassed in violation of the Americans with Disabilities Act (the ADA) and New York State Human Rights Law ("NYHRL").  See Am. Compl. dkt. # 5.  Defendant moves for summary judgment pursuant to Fed. R. Civ. P. 56, seeking to dismiss all of Plaintiff's claims.  See Motion, dkt. # 39.  Plaintiff opposes the motion by filing only an affidavit with exhibits.  See Response, dkt. # 41.  Defendant filed a reply to Plaintiff's opposition.  See Reply, dkt. # 42.  The motion is before the Court based on the submissions alone, all of which the Court considers in reaching its decision.

**II.    STANDARD OF REVIEW**

      The Court may grant summary judgment where "there is no genuine dispute as to

1

any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV.

P. 56(a).  A dispute is genuine if the relevant evidence is such that a reasonable jury could

return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, 477 U.S. 242, 248

(1986).  A party seeking summary judgment bears the burden of informing the court of the

basis for the motion and of identifying those portions of the record that the moving party

believes demonstrate the absence of a genuine issue of material fact as to a dispositive

issue. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the movant is able to establish a *prima facie* basis for summary judgment, the

burden of production shifts to the party opposing summary judgment who must produce

evidence establishing the existence of a factual dispute that a reasonable jury could

resolve in his favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587

(1986).  The nonmoving party must show, by affidavits or other evidence, admissible in

form, that there are specific factual issues that can only be resolved at trial. Colon v.

Coughlin, 58 F.3d 865, 872 (2d Cir. 1995).  "[P]roceeding *pro se* does not otherwise

relieve a litigant from the usual requirements of summary judgment." Viscusi v. Proctor &

Gamble, 2007 WL 2071546, at * 9 (E.D.N.Y. July 16, 2007).

In determining whether to grant summary judgment, the Court must view all facts in

the light most favorable to the nonmoving party, but "only if there is a 'genuine' dispute as

to those facts." Scott v. Harris, 127 S. Ct. 1769, 1776 (2007).  The nonmoving party

cannot defeat summary judgment by "simply show[ing] that there is some metaphysical

doubt as to the material facts," Matsushita., 475 U.S. at 586, or by a factual argument

based on "conjecture or surmise." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  In

2

this regard, a party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in the pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998). Hearsay is also insufficient to create a question of fact on a summary judgment motion. See Fed. R. Civ. P. 56(c)(4).

The Local Rules of the Northern District require a party moving for summary judgment to submit a "Statement of Material Facts" which sets forth, with citations to the record, each material fact about which the moving party contends there exists no genuine issue.  N.D.N.Y.L.R. 7.1(a)(3).  Once a properly supported Local Rule 7.1(a)(3) Statement is submitted, the party opposing the motion must

> file a response to the [movant's] Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute in separately numbered paragraphs. Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.

Id. (underscoring in original).

The responding Statement of Material Facts is not a mere formality, and the courts apply this rule strictly. See N.Y. Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc., 426 F.3d 640, 648-49 (2d Cir. 2005)(upholding grant of summary judgment where "[t]he district court, applying Rule 7.1(a)(3) strictly, reasonably deemed [movant's] statement of facts to be admitted" because the non-movant submitted a responsive Rule 7.1(a)(3) statement that "offered mostly conclusory denials of [movant's] factual assertions

3

and failed to include any record citations."); Gubitosi v. Kapica, 154 F.3d 30, 31 n. 1 (2d Cir. 1998)(per curiam)(accepting as true material facts contained in unopposed local rule statement of material facts); Meaney v. CHS Acquisition Corp., 103 F. Supp.2d 104, 108 (N.D.N.Y. 2000)(deeming movant's Rule 7.1(a)(3) Statement admitted where non-movant's response "set forth *no* citations – specific or otherwise – to the record")(emphasis in original); McKnight v. Dormitory Auth. of State of N.Y., 189 F.R.D. 225, 227 (N.D.N.Y. 1999)(McAvoy, J.)("deem[ing] the portions of Defendants' 7.1(a)(3) statement that are not specifically controverted by Plaintiff to be admitted"); Osier v. Broome County, 47  F. Supp.2d 311, 317 (N.D.N.Y. 1999) (McAvoy, J.)(deeming admitted all facts in defendants' Rule 7.1(a)(3) statement where "plaintiff submitted thirteen pages of purported facts without any indication where those facts can be located in the record").

While the Court must construe a *pro se* litigant's pleadings and papers liberally and interpret them to raise the strongest arguments that they suggest, Govan v. Campbell, 289 F. Supp.2d 289, 295 (N.D.N.Y. 2003);[1] Veloz v. New York, 339 F. Supp.2d 505, 513 (S.D.N.Y.  2004), application of this lenient standard does not relieve a *pro se* litigant of the requirement to follow the procedural formalities of Local Rule 7.1(a)(3).  Govan, 289 F. Supp.2d at 295; see also Faretta v. California, 95 S. Ct. 2525, 2541 n. 46 (1975)("The right of self-representation is not a license . . . not to comply with relevant rules of procedural and substantive law."); Edwards v. INS, 59 F.3d 5, 8 (2nd Cir. 1995)("While a *pro se* litigant's pleadings must be construed liberally, . . . *pro se* litigants generally are required to inform themselves regarding procedural rules and to comply with them.").

---

[1] To construe pleadings liberally means the Court must view the submissions by a more lenient standard than that accorded to "formal pleadings drafted by lawyers." Govan, 289 F. Supp.2d at 295.

Plaintiff's opposition to Defendant's motion consists merely of an affidavit accompanied by certain exhibits.  <u>See</u> Response in Opposition [dkt. # 41].  She has submitted neither the required memorandum of law in opposition to Defendant's motion, nor the required response to Defendant's Statement of Material Facts. <u>See</u> N.D.N.Y.L.R. 7.1(a)(3).  Because Plaintiff has not submitted an opposing Statement of Material Facts, the properly supported facts set forth in Defendant's STATEMENT OF MATERIAL FACTS NOT IN DISPUTE are deemed admitted for purposes of this motion. <u>See</u>  N.D.N.Y.L.R. 7.1(a)(3).

## III.    BACKGROUND[2]

Plaintiff Jennifer A. Zurenda ("Plaintiff" or "Ms. Zurenda") began working for Defendant Cardiology Associates, P.C. ("Defendant" or "Cardiology Associates") on December 17, 2002 as a File Clerk/Receptionist.  Cardiology Associates is a New York professional corporation that provides cardiac medical services to patients in the Greater Binghamton area.  It is governed by its Board of Directors, which consists of its ten partner physicians. Doctor Afzul Ur Rehman is the current president of the Board and Cathy Comeno is the clinical manager at Cardiology Associates.

As a File Clerk/Receptionist, Plaintiff was required to do filing, retrieve charts and records, and answer the telephone.  Her position required her to both stand and sit throughout the day, and her filing responsibilities involved standing and bending regularly. Cathy Comeno reviewed Ms. Zurenda's performance as a File Clerk/Receptionist.  Ms. Zurenda received mediocre performance reviews.  These repeatedly noted that Plaintiff had the following problems: poor attendance; need for workflow improvement, need for

_____

[2]Except where indicated otherwise, the facts are taken from  Defendant's STATEMENT OF MATERIAL FACTS NOT IN DISPUTE.

improvement of morale; need for increased dependability; and need for increased written communication.  Ms. Zurenda signed each of these reviews, and the reviews occurred before Ms. Zurenda left work for her first knee surgery (discussed *infra*).

In 2006, Ms. Zurenda took a medical leave of absence from Cardiology Associates for a neck injury. That leave of absence lasted two to three months.  Cardiology Associates accommodated Ms. Zurenda's neck injury by allowing her this leave, and she returned to work when it was over.

In 2007, Ms. Zurenda took a six-week medical leave of absence from Cardiology Associates for thyroid surgery.  Cardiology Associates accommodated Ms. Zurenda's need for thyroid surgery by granting this leave, and she returned to work when it was over.

On February 1, 2008, after the resignation of another staff member, Ms. Zurenda was assigned to the position of Telephone Operator.[3]  Ms. Zurenda's job duties as a Telephone Operator were essentially the same as a File Clerk/Receptionist with the additional duties of handling patient check-in and check-outs.  During the time Ms. Zurenda was a Telephone Operator, Ellen Smith reviewed her performance.  Ms. Zurenda's 2008 annual performance review noted that while she had improved in some areas she still needed to improve her productivity and "produce more work in a typical workday."  This performance review was signed by Ms. Zurenda, Ellen Smith, and Cathy Comeno.

In December 2008, Ms. Zurenda requested and received a medical leave of

---

[3]At first, the assignment was on a temporary basis, but in August 2008 she was permanently assigned to this position.

absence for surgery on her right knee.  Ms. Zurenda was out of work for six weeks on this

leave.  She returned to work on February 2, 2009.   Upon her return to work, Ms. Zurenda

was allowed to work part time and park in the patient parking handicapped space.  Plaintiff

contends, however, that her part time schedule was not a reasonable accommodation for

her because she had requested that she work in the mornings only so that she "could do

physical therapy, chiropractor [*sic*] and counseling in the afternoons."  Am. Compl. ¶ 12.

According to Plaintiff, she was scheduled to work two afternoons, one of which she agreed

to work but one of which she did not because she did not have sufficient notice to

reschedule her appointments.  Id. ¶ 13. Plaintiff asserts that when she protested, she was

told: "Either you work, or you don't have a job." Id. ¶ 14.

     Plaintiff also contends that "[d]uring [this] time period, plaintiff was subjected to

various demeaning comments regarding her condition by defendant's

supervisor/management, such as, 'I could come to work on crutches'[,] as well as

comments from a doctor who would refer to the plaintiff as his 'big nigger'." Id. ¶ 15.

Plaintiff asserts that she reported the doctor's racially derogatory remark to Ellen Smith but

was told: "Just shrug it off, it's a joke." Pl. Aff. ¶ 5.  Plaintiff also contends that she sought

"some accommodation" for her leg, but was told by Ellen Smith to "pull out the desk

drawer and put [her] foot on that, and that [she] only worked four hours, and that [she]

could handle it."  Id. ¶ 11.  Plaintiff does not believe that putting her foot on the desk draw

"is really an accommodation," id., but she does not identify what accommodation she

sought while at work or what accommodation she thought was reasonable.

     Plaintiff also maintains that around this time she received an e-mail message

asking her to fill in for others who could not work on two days. Id. ¶ 12.  She responded to

Cathy Comeno by saying that she could work on one of the days but not the other. Id.
Plaintiff purportedly told Comeno that the reason she could not work on the one day was
because "it was related to my health conditions, and disability," but Comeno told Plaintiff
that she had to work on the date or she would be fired. Id.

On April 23, 2009, and because of a decline in income by Cardiology Associates as
a result of reduced Medicare and insurance payments for certain procedures, Defendant's
Board voted to lay-off staff.[4]  After considering a number of possibilities for the staff
reduction, the Board voted to make cuts from each of the employee groups.
Consequently, Cardiology Associates laid off one nurse practitioner, two nurses, and two
staff members, including Ms. Zurenda. The people who were laid off were determined to
be the least effective at doing their job in each employee group. This determination was
made by the Board by majority vote. None of the office staff, including Cathy Comeno and
Ellen Smith, participated in or had a say in the vote.  Cardiology Associates paid
severance for the professional employees (the nurses and nurse practitioner). They did
not pay severance to Ms. Zurenda or to the other medical records clerk who was laid off.
This decision was based solely on the classification of the employee.  Plaintiff was told of
the decision on the same day.

Defendant asserts that at the time Ms. Zurenda was laid off, neither the Board
members nor Ms. Comeno were aware that Ms. Zurenda had scheduled another right
knee surgery in May 2009.  Ms. Zurenda asserts, however, that "at the time they ended
my employment, they knew I was set for more surgery on my right knee. Attached ... is a

_____

[4]Cardiology Associates also took other cost cutting measures that are set forth in its STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE at ¶¶ 33-35, 46-48.

copy of a letter [dated April 13, 2009] regarding the surgery, a copy of which I provided to the defendant several days after I received it."  Zurenda Aff. ¶ 10. Ms. Zurenda also asserts that she was told by someone at Cardiology Associates that she was "not eligible for disability [when she had her second knee surgery] because your are laid off." Am. Compl. ¶ 19.

Ms. Zurenda is not currently employed, has not been employed, and has been unable to work since leaving Cardiology Associates.  She has not sent out any resumes or looked for any work since leaving Cardiology Associates, and her physicians have told her not to look for work because of her knee surgeries, back problems, depression and anxiety.  Her physicians have never told her when she might be able to go back to work. Ms. Zurenda testified on November 8, 2011 that she has had five (5) knee surgeries in two (2) years and feels she has not been doing well since these surgeries. She testified that her father does her laundry because she cannot carry the basket or climb the stairs, and her mother cleans her house because the activities, including bending and standing, bother her back.  She also needs assistance when she shops.  In addition to her knee problems, Ms. Zurenda believes she has been diagnosed as bipoloar or schizophrenic and that it affects her ability to be around people and work.

Ms. Zurenda has applied for Social Security Disability on two occasions, and has applied for and received short-term disability after leaving Cardiology Associates.  Ms. Zurenda applied for unemployment insurance benefits, but was unable to receive these benefits because she was unable to work.

On April 23, 2009, Ms. Zurenda's orthopedic surgeon, Dr. Battaglia, noted in her chart that she was totally disabled until further notice or her next office visit.  Dr.

Battaglia has made that same notation on each of Ms. Zurenda's visits since that date.

After Ms. Zurenda's termination, she filed a complaint with the New York State Division of Human Rights ("DHR") that was dually filed with the Equal Employment Opportunities Commission ("EEOC").  She later amended her DHR complaint. The DHR complaint, as amended, asserts the claims asserted in this action.  After investigation, the DHR determined that there was no probable cause to believe discrimination had occurred. After receiving the DHR's determination, Ms. Zurenda did not appeal it in state court but instead commenced the instant action.

## IV.   DISCUSSION

### a.   NYSDHR Claims

To the extent that Plaintiff asserts claims under the New York State Human Rights Law ("NYSHRL") based upon conduct complained of to the New York Division of Human Rights, those claims are barred by the NYSHRL's election of remedies provision contained at New York Executive Law § 297(9).  This provides that "[a]ny person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction . . . unless such person had filed a complaint hereunder." N.Y. Exec. Law § 297(9).  "[New York Executive Law § 297(9)] deprives federal courts of subject matter jurisdiction where a plaintiff previously elected to proceed in an administrative forum."  Chudnovsky v. Prudential Sec., Inc., 2000 WL 1576876, at *4 (S.D.N.Y. Oct. 23, 2000).  Thus, "[o]nce a complainant elects the administrative forum by filing a complaint with the Commission on Human Rights, that becomes the sole avenue of relief, and subsequent judicial action on the same complaint is generally barred . . . ."

10

Moodie v. Fed. Reserve Bank of N.Y., 58 F.3d 879, 884 (2d Cir.1995).[5]  "Furthermore,

once a plaintiff brings a case before the NYSDHR, he or she may appeal only to the

Supreme Court of the State of New York."  York v. Ass'n of Bar of City of New York, 286

F.3d 122, 127 (2d Cir. 2002) (citing N.Y. Exec. Law § 298).

    Because Plaintiff's Division of Human Rights complaint was dismissed based on a

finding of "no probable cause," the Court lacks subject matter jurisdiction to consider

NYSHRL claims based on the same acts raised with the Division.  Jones v. Onondaga

County Res. Recovery Agency, 2011 WL 1298774, *6 (N.D.N.Y. Mar. 31, 2011);  DeWald

v. Amsterdam Housing Authority, 823 F. Supp. 94, 99 (N.D.N.Y. 1993).  Accordingly, all

NYSHRL claims asserted in this matter are dismissed.

### b.  Disparate Treatment Claim Under the ADA

    Plaintiff brings a disparate treatment claim under the ADA, asserting that she was

discharged because of her disabilities.  The ADA prohibits discrimination against a

"qualified individual [with a disability] on the basis of disability" in the "terms, conditions,

and privileges of employment." 42 U.S.C. § 12112(a).  Claims alleging discriminatory

discharge under the ADA are analyzed using the burden-shifting paradigm articulated in

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See Parker v. Columbia

Pictures Indus., 204 F.3d 326, 332 n. 1 (2d Cir. 2000) (ADA claims are evaluated under

McDonnell Douglas); Heyman v. Queens Village Comm. for Mental Health for Jamaica

Cmty. Adolescent Program, Inc., 198 F.3d 68, 72 (2d Cir.1999).  Under this analysis,

Plaintiff first bears the burden of setting out a *prima facie* case of discrimination. See

---

[5]The exception to this rule is a dismissal for administrative convenience made before the
administrative agency renders a decision on the complaint.

McDonnell Douglas, 411 U.S. at 802.  Plaintiff's burden of establishing a *prima facie* case is *de minimis.* Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir. 2008).  If the plaintiff demonstrates a *prima facie* case, that gives rise to a presumption of unlawful discrimination and the burden of production shifts to the defendant who is required to offer a legitimate, nondiscriminatory rationale for its actions.  See McDonnell Douglas, 411 U.S. at 802–03.  Defendant's burden of production at this stage "is not a demanding one," Bickerstaff v. Vassar College, 196 F.3d 435, 446 (2d Cir. 1999), it need only offer a basis for the employment decision in issue which, "taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993).

If Defendant proffers a legitimate, nondiscriminatory reason for the challenged action, "the presumption raised by the *prima facie* case is rebutted, and drops from the case." St. Mary's Honor Ctr., 509 U.S. at 507.  The burden shifts back to Plaintiff who "then has the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision, and that [unlawful retaliation] was." Fisher v. Vassar College, 114 F.3d 1332, 1336 (2d Cir. 1997)(*en banc*)(internal citation and quotation marks omitted), cert. denied, 522 U.S. 1075 (1998); see Stern v. Trustees of Columbia Univ. in the City of N.Y., 131 F. 3d 305, 312 (2d Cir.1997)(In order to defeat summary judgment . . ., the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination.").  The ultimate burden of persuasion remains always with Plaintiff.  St. Mary's Honor Ctr., 509 U.S. at 507, 511.  In

12

determining whether Plaintiff can satisfy this ultimate burden, the Court must examine the entire record and apply "a case-by-case approach." Schnabel v. Abramson, 232 F.3d 83, 90 (2d Cir. 2000).

To establish a *prima facie* case of discrimination under the ADA, Plaintiff must show that: (1) her employer is subject to the ADA, (2) she is disabled within the meaning of the ADA, (3) she is otherwise qualified to perform the essential functions of her job with or without reasonable accommodation, and (4) she was discharged because of her disability. See Jacques v. DiMarzio, Inc., 386 F.3d 192, 198 (2d Cir. 2004).  The second, third, and fourth elements, as well as the ultimate question of discrimination, are in dispute on this motion.

### (1) Disabled within the meaning of the ADA

On the second element of the *prima facie* case, Plaintiff must present evidence demonstrating that she is disabled within the meaning of the ADA.  The ADA defines disability with respect to an individual as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1); Buckley v. Consol. Edison Co. of N.Y., 127 F.3d 270, 272 (2d Cir.1997).  "[T]he determination of whether or not a person suffers from a disability under the ADA 'is an individualized inquiry' that does not rest on the mere diagnosis of an impairment." Bonilla v. Boces, 2010 WL 3488712, at *5 (W.D.N.Y. Sept. 2, 2010)(citing Sutton v. United Airlines, 527 U.S. 471, 483 (1999)).  Instead, courts are to look to "the effect of [an] impairment on the life of the individual,"  29 CFR pt. 1630, App. § 1630.2(j), and "[i]t is

insufficient for individuals attempting to prove disability status . . . to merely submit evidence of a medical diagnosis of impairment." Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 198 (2002). Regulations promulgated under the ADA define "major life activities" to include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(I); see also Buckley v. Consolidated Edison Co. of New York, Inc., 155 F.3d 150 (2d Cir.1998) (*en banc*).

To be "substantially impaired" from performing a major life activity, a plaintiff must have an impairment that "prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." Toyota, 534 U.S. at 197. "The need to identify a major life activity that is affected by the plaintiff's impairment plays an important role in ensuring that only significant impairments will enjoy the protection of the ADA." Reeves v. Johnson Controls World Servs., 140 F.3d 144, 152 (2d Cir.1998).

Plaintiff asserts that she was disabled from the major life activity of working. An impairment "substantially limits" the major life activity of working if an individual is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3). "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." Id.

At the time Plaintiff was discharged for her employment, she was recovering from a knee surgery but was working on a part time basis. Although it appears that her mobility was limited and she feels that she was not provided some unidentified accommodation at work and the part time schedule she wanted, the evidence does not indicate that, at the

14

time, she was disabled from the major life activity of working. Plaintiff argues, however, that she was scheduled for a second right knee surgery at the time, and seemingly asserts that this upcoming surgery would prevent her from working while she recovered thereby qualifying as a disability under the ADA.  This is insufficient.

"A disability under the ADA 'does not include temporary medical conditions, even if those conditions require extended leaves of absence from work' because such conditions are not substantially limiting." Huskins v. Pepsi Cola of Odgensburg Bottlers, Inc., 180 F. Supp. 2d 347, 351-52 (N.D.N.Y. 2001)(quoting Halperin v. Abacus Technology Corporation, 128 F.3d 191, 199 (4th Cir.1997)). "Courts within this circuit and the vast majority of courts elsewhere which have considered the question, have held that temporary disabilities do not trigger the protections of the ADA because individuals with temporary disabilities are not disabled persons within the meaning of the act." Graaf v. North Shore University Hospital, 1 F. Supp.2d 318, 321 (S.D.N.Y.1998); see also Adams v. Citizens Advice Bureau, 187 F.3d 315, 316-17 (2d Cir.1999) (temporary neck, back, and knee injury lasting three and a half months not a disability); Colwell v. Suffolk County Police Dep't, 158 F.3d 635, 646 (2d Cir.1998) (temporary impairment of seven months inability to work while recovering from a cerebral hemorrhage not substantially limiting); Murray v. Svsco Corp., 1998 WL 160826, at *8 (N.D.N.Y. Apr. 2, 1998) (holding that a knee injury requiring surgery did not have the required duration or long-term impact to qualify as a disability under the terms of the ADA).  Thus, Plaintiff has not presented evidence that, at the time of her employment, she suffered from or had a record of an impairment that qualified as a disability under the ADA.

Further, and assuming the decision maker at Cardiology Associates was aware of

Plaintiff's upcoming second right knee surgery, Plaintiff has not presented evidence that would satisfy even the new, more lenient standard for determining whether an individual is "regarded as disabled." See Laurent v. G & G Bus Service, Inc.,  2011 WL 2683201, at *5-*6 (S.D.N.Y. May 17, 2011).[6]

> Pursuant to this more lenient standard, an employee is "not required to show that the disability [s]he is perceived as suffering from is one that actually limits, or is perceived to limit, a major life activity." Darcy v. City of New York, No. 06–CV–2246, 2011 WL 841375, at *4 (E.D.N.Y. Mar. 8, 2011).  Nor does the employee have to "show that the employer had a reasonable basis for perceiving [her] as suffering from a disability; [the statute] merely requires [her] to show that the employer did so perceive [her]." Id.

Davis v. NYC Dept. of Educ., 10-CV-3812 KAM LB, 2012 WL 139255, at * 5 (E.D.N.Y. Jan. 18, 2012).

> The ADAA specifies, however, that the "regarded as" definition of disability does not apply to impairments that are both transitory and minor. 42 U.S.C. § 12102(3)(B); see also 29 C.F.R. § 1630.15(f) (2011) ("It may be a defense to a charge of discrimination by an individual claiming coverage under the "regarded as" prong of the definition of disability that the impairment is (in the case of an actual impairment) or would be (in the case of a perceived impairment) 'transitory and minor.' ").  An impairment is transitory if it has "an actual or expected duration of 6 months or less." 42 U.S.C. § 12102(3)(B). "Whether the impairment at issue is or would be 'transitory and minor' is to be determined objectively." 29 C.F.R. § 1630.15(f) (2011).

Id.

---

[6]

[T]he ADA was recently amended by the ADA Amendments Act of 2008 ("ADAAA"), Pub.L. No. 110–325, 122 Stat. 3553 (2008). The ADAAA sets forth a new standard for determining whether a person is "regarded as having such an impairment":

> An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.

42 U.S.C. § 12102(3)(A).

Laurent v. G & G Bus Service, Inc.,  2011 WL 2683201, at *5-*6 (S.D.N.Y. 2011),  adopted by 2011 WL 2693651 (S.D.N.Y. July 11, 2011).

While the evidence indicates that after Ms. Zurenda was discharged she suffered from a combination of conditions completely limiting her ability to work (discussed *infra*), Plaintiff has presented no basis on which to conclude that anyone at Cardiology Associates was, or could have been, aware that these developments would ensue.  Based on Plaintiff's history of physical aliments and surgeries requiring leaves from work of between six (6) and twelve (12) weeks, which includes her first knee surgery, the evidence indicates, when objectively viewed at the time of the employment decision in question, that Plaintiff has presented evidence indicating only that she was regarded as having an impairment that was transitory and minor in nature.  Accordingly, Plaintiff has not satisfied the second element of her *prima facie* case.

### (2) Otherwise qualified to perform the essential functions of her job

Assuming, *arguendo*, that Plaintiff could satisfy the second element of her *prima facie* case, she must also present evidence demonstrating that she is otherwise qualified to perform the essential functions of her job with or without reasonable accommodation. "It is axiomatic that an individual cannot perform the essential functions of a job if [s]he is completely unable to work regardless of accommodation."  Henzel v. Delaware Otsego Corp., 285 F. Supp.2d 271, 276 (N.D.N.Y. 2003)(collecting cases); see also Mitchell v. Washingtonville Cent. Sch. Dist., 190 F.3d 1, 8 (2d Cir. 1999)("[O]nce estopped from arguing he could walk and stand and therefore bound to the assertion that he could only do sedentary work, [Plaintiff] could not show that he could perform the essential functions of Head Custodian with a reasonable accommodation. He therefore failed to make out a claim under the ADA.").  The undisputed evidence in this matter indicates that Plaintiff has

been totally disabled from employment since her physician excused her from work on April 23, 2009.  Her physicians have not cleared her to return to work, even on a part time basis.  See Pl. Dep. Trans., p. 7.  Plaintiff testified that she has not been able to work since that date because of her knee surgeries, back problems, depression and anxiety. Id.  Further, Plaintiff has neither looked for work nor sent out any resumes since April 23, 2009, and has twice applied to receive disability benefits from the Social Security Administration because of her inability to work. Id. pp. 6, 9-10.  In light of these facts, Plaintiff is unable to satisfy the third element of her *prima facie* case.

### (3) Discharged motivated by disability

Nevertheless, and assuming that Plaintiff could establish that she was disabled within the meaning of the ADA and otherwise qualified to perform her former position either with or without a reasonable accommodation, she must establish that consideration of her disability was a motivating factor in the discharge determination.  Crediting her contention that she was discharged because she was about to undergo another right knee surgery, and thus assuming she could satisfy the fourth element of her *prima facie* case on the theory that she was discharged because of the circumstances related to her physical condition, the employer has stated a legitimate, non-discriminatory reason for her (and three other individuals') discharge.  Namely, the uncontradicted evidence indicates that in the face of an economic downturn, Defendant determined, *inter alia*, to lay off the four least productive employees in each of three employment classifications, and that Plaintiff was one of two employees in her employment classification who was laid off.

Thus, the burden is shifted back to Plaintiff to demonstrate that the employer's

18

stated reason is not the true reason for her discharge or that a discriminatory motive was involved in the decision.  She has not satisfied this burden. Plaintiff has presented insufficient evidence from which a reasonable fact finder could conclude that consideration of her physical condition motivated the discharge determination. Plaintiff has not demonstrated that her prior work performance exempted her from layoff based upon the employer's legitimate businesses-related criteria, or that similarly situated non-disabled employees were treated differently than she was treated.

Plaintiff argues that evidence of discrimination is shown by the fact that Cardiology Associates hired an individual in August 2009 who performed some of the functions that Plaintiff used to perform when her coworkers were on their lunch breaks.  However, even if Cardiology Associates filled Ms. Zurenda's position in August 2009, almost 4 months after Plaintiff's discharge, Plaintiff has not demonstrated that this act is indicative of discrimination.   While the filling of a position by someone outside of a protected classification can provide some evidence of a discriminatory motive, here there is no evidence that Plaintiff applied for reinstatement or that she could have performed the functions of the position in August 2009.  Indeed, the evidence is to the contrary, indicating that her physician deemed her unable to work in any capacity from April 2009 to the present.  At most, Plaintiff's claim of ADA disparate treatment is based upon her own feelings and perception of being discriminated against, but such "feelings and perceptions of being discriminated against are not evidence of discrimination." Bickerstaff, 196 F.3d at

446;  see id. at 448;[7] Richardson v. New York State Dep't, of Correctional Service, 180 F.3d 426, 447 (2d Cir. 1999).[8]  Plaintiff has failed to provide sufficient evidence from which a reasonable fact finder could conclude that considerations of her medical condition motivated the employer's layoff determination.

For the reasons discussed above, Plaintiff's ADA disparate treatment claim is dismissed.

**b.      ADA Hostile Work Environment Claim**

Plaintiff also alleges a claim of hostile work environment under the ADA.  To establish a claim of hostile work environment under the ADA,[9] a plaintiff must prove that the workplace was permeated with discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. Clark County School District v. Breeden, 532 U.S.

---

[7] As indicated in Bickerstaff, on a motion for summary judgment the Court:

> must also carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture.   This undertaking is not one of guesswork or theorization.   After all, an inference is not a suspicion or a guess.   It is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact that is known to exist. Thus, the question is whether the evidence can reasonably and logically give rise to an inference of discrimination under all of the circumstances.

Bickerstaff, 196 F.3d at 448 (internal quotation marks and citations omitted).

[8] (affirming summary judgment for employer where employee offered only her own general claim of discrimination to show that the employer's legitimate reason for terminating her was pretextual)

[9] The Court assumes, arguendo, that the Second Circuit recognizes a hostile work environment cause of action under the ADA. See, e.g., Braun v. Securities Sec. Services USA. Inc., 2009 WL 150937, *8 (E.D.NY. January 20, 2009)("Although the Second Circuit has not determined whether the ADA gives rise to a cause of action for hostile work environment, see Bonura v. Sears Roebuck & Co., 62 F. App'x. 399, 400 n. 3 (2d Cir. 2003), several district courts in this circuit have held that such claims are cognizable. See, e.g., Hendler v. Intelecom USA, Inc., 963 F. Supp. 200, 208 (E.D.N.Y.1997) (analyzing ADA hostile work environment claim under the same standard utilized in Title VII cases); Hudson v. Loretex Corp.,1997 WL 159282, at *2–3 (same).").

268, 270 (2001); Harris v. Forklift Sys., 510 U.S. 17, 21 (1993); Quinn v. Green Tree

Credit Corp., 159 F .3d 759 (2d Cir.1998); see Hendler v. Intelecom USA, Inc., 963 F.

Supp. 200, 208 (E.D.N.Y.1997)(analyzing ADA hostile work environment claim under the

same standard utilized in Title VII cases).   A "hostile work environment claim will succeed

only where the conduct at issue is so 'severe and pervasive' as to create an 'objectively

hostile or abusive work environment,' and where the victim 'subjectively perceive[s] the

environment to be abusive.'" Richardson v. N.Y. State Dep't. of Correctional Serv., 180

F.3d 426, 436 (2d Cir. 1999), *abrogated on other grounds by* Burlington N. & Santa Fe Ry.

Co. v. White, 548 U.S. 53, 126 S. Ct. 2405, 165 L. Ed.2d 345 (2006)(quoting Harris, 510

U.S. at 21-22).  The objective aspect of this test is judged by a reasonable person

standard. Id.  To analyze a hostile work environment claim, the Court "must look to the

record as a whole and assess the totality of the circumstances, considering a variety of

factors including 'the frequency of the discriminatory conduct; its severity; whether it is

physically threatening or humiliating, or a mere offensive utterance; and whether it

unreasonably interferes with an employee's work performance.'" Gorzynski v. Jetblue

Airways Corp., 596  F.3d 93, 102 (2d Cir. 2010)(quoting Harris, 510 U.S. at 23).

        The Second Circuit has repeatedly held that "[i]solated, minor acts or occasional

episodes do not warrant relief" under a hostile environment theory. Brennan v.

Metropolitan Opera Assn, Inc., 192 F.3d 310, 318 (2d Cir. 1999)(citing Kotcher v. Rosa

and Sullivan Appliance Ctr., Inc., 957 F.2d 59, 62 (2d Cir. 1992)).  "Generally, unless an

incident of harassment is sufficiently severe, 'incidents must be more than episodic; they

must be sufficiently continuous and concerted in order to be deemed pervasive.'"

Gorzynski, 596  F.3d at 102 (quoting Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002));

21

see also  Kaytor v. Elec. Boat Corp., 609 F.3d 537, 547 (2d Cir. 2010)("Isolated incidents ... will not suffice to establish a hostile work environment unless they are extraordinarily severe." ); Alfano, 294 F.3d at 376 ("the twelve incidents cited by [plaintiff], taken together, [we]re insufficient as a matter of law to meet the threshold of severity or pervasiveness required for a hostile work environment"); Williams v. Cnty. of Westchester, 171 F.3d 98, 100 (2d Cir. 1999) (plaintiff must show "more than a few isolated incidents" and that "evidence solely of sporadic" discrimination does not suffice) (quotation marks and citation omitted).

Plaintiff's hostile work environment claims rest upon allegations that on a few occasions she had to work when she did not want to and a few isolated comments she found objectionable, some of which are not related to her asserted disability but rather have derogatory racial or ethnic connotations. Even considering the events in totality, including the non-disability related comments for the impact they had on the atmosphere in the office, Plaintiff has not demonstrated sufficiently pervasive or severe harassment such to create an actionable hostile work environment.  Therefore, Plaintiff's ADA hostile work environment claim is dismissed.

**V.     CONCLUSION**

For the reasons discussed above, Defendant's motion for summary judgment [dkt. # 39] is **GRANTED** and Plaintiff's claims are **DISMISSED** in their entirety.

**IT IS SO ORDERED.**

**Dated:** May 16, 2012

Thomas J. McAvoy
Senior, U.S. District Judge